**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **TONIA MONTGOMERY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: 5:12-CV-00613-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |
| | } | |

**MEMORANDUM OF DECISION**

Tonia Montgomery ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under the Act. *See also* 42 U.S.C. § 405(g). After full review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed her application for DIB on February 18, 2009,[1] in which she alleged that her disability began on December 15, 2006.[2]   (Tr. 130).   The Social Security Administration initially denied Plaintiff's application on July 1, 2009.  (Tr. 107).  Plaintiff then requested and received a hearing, via teleconference, with Administrative Law Judge C. G. Weaver ("ALJ") on August 19, 2010.   (Tr. 115, 118-23).   In her decision, dated October 26, 2010, the ALJ determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act from

---

[1]Plaintiff also filed for DIB on August 22, 2007, and was denied by the Commissioner on November 27, 2007. (Tr. 18, 102).  Plaintiff did not pursue any further appeal on this denial.  (Tr. 18, 209).

[2]In a pre-hearing statement, Plaintiff later amended her onset date of disability to November 28, 2007.  (Tr. 141).

November 28, 2007 through October 26, 2010.  (Tr. 18-32).  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.  (Tr. 1).  42 U.S.C. § 405(g).

At the time of the hearing, Plaintiff was 47-years old with a ninth grade education.  (Tr. 130, 158).  She worked previously as a cashier, clean-up helper, and janitor, but stopped working on December 15, 2006.  (Tr. 65-66, 77-78, 163).  Plaintiff alleges that she has been disabled since November 28, 2007 due to fibromyalgia, borderline intellectual functioning, depression, osteoarthritis in her left knee, a cervical discectomy and fusion, disk protrusion, and high blood pressure.  (Tr. 146, 153).

At the hearing, Plaintiff testified that the primary reason that she is unable to work is pain.  (Tr. 49).  She also stated that the cervical discectomy and fusion alleviated some, but not all of her pain.  (*Id.*). Plaintiff testified that the fibromyalgia in her feet created knots that caused pain, but the Lyrica that she is treated with reduces the discomfort.  (Tr. 51-52).  Plaintiff also stated that a fall at Wal-Mart caused a bruised tailbone and whiplash, but the problems associated with that incident lasted "[j]ust for a little while."  (Tr. 53).

Plaintiff stated that due to the pain caused by her fibromyalgia, her doctors are unable to control her high blood pressure.  (Tr. 73).  This requires her to check her blood pressure numerous times throughout the day and alter her medicine dosage accordingly.  (Tr. 73-74).  She also stated that initially she thought her shoulder and arm pain were caused by her breast reconstruction surgery, not her previous neck problems, but later found out the pain was due to fibromyalgia.  (Tr. 74-75).

2

Plaintiff testified that she is only comfortable while lying on a pallet on the floor. (Tr. 54, 70). She claimed to get little sleep during the nighttime due to the pain in her shoulders and legs, and has to turn over or wakes up every 15 minutes or so due to pain. (Tr. 68-69). Plaintiff is prescribed a sleeping aid (Cymbalta) to help her rest and prevent her from being tired throughout the day. (*Id.*). When describing a typical day, she does household chores such as vacuuming, some laundry, and will occasionally go down the street to pick up a few small items. (Tr. 54, 70). Plaintiff further testified that she helps out at the Food Mart about three times each month; however, she refused to help out the day before the hearing because she "panicked over [it] being brought up [at the hearing]." (Tr. 59-60).

In support of her testimony, Plaintiff submitted several medical records pertaining to her neck ailments. On May 14, 2007, the results of an MRI ordered by Dr. Lynn Boyer showed that Plaintiff suffered from a bulging disk extending back 3mm in the midline but not affecting the nerve roots, a bulging disk in the midline at C6-7, and a cervical kyphosis secondary to the above with "probably" some associated muscle spasms. (Tr. 425-32).

Approximately two years later, on April 17, 2009, Plaintiff was examined by Dr. Cyrus Ghavam for her continuing neck pain and headaches. (Tr. 376-78). Dr. Ghavam noted that Plaintiff was tender at the midline of her neck, but had a full range of motion and suggested a cervical epidural steroid injection. (*Id.*). However, on July 29, 2009 after an increase in neck pain that moved to her right arm, Plaintiff elected to have an anterior cervical discectomy and fusion ("ACDF") for C5-6 and C6-7 of her spine. (Tr. 371-75). Through three post-operation visits,[3] Dr. Ghavam determined that Plaintiff was "doing very well" with the exception of possible migraines and sinus headaches that were being treated by her regular physician. Dr. Ghavam concluded that Plaintiff's range of motion of her neck was improving and range of

---

[3]The dates of the post-op visits were September 2, 2009, September 16, 2009, and October 28, 2009.

motion in her shoulders, elbows, and wrists were full with mild pain in the rotation of the right shoulder.  (Tr. 368-70).

At Plaintiff's sixth month post-operation visit on February 26, 2010, x-rays showed progressive healing of the surgical areas.  (Tr. 457).  Dr. Ghavam noted that although Plaintiff had a setback when she fell at Wal-Mart and was having some mild achiness, "this [was] not limiting her." (*Id.*). In her most recent recorded appointment with Dr. Ghavam on June 30, 2010, he concluded that overall Plaintiff was doing very well and prescribed physical therapy and Relafen to help with myofascial pain in her right arm and neck.  (Tr. 456).

Plaintiff also submitted records concerning her fibromyalgia diagnosis.  Plaintiff first visited Rheumatology Associates of North Alabama ("RANA") on July 12, 2007, complaining of joint and muscle pain that prevented her from doing work in the yard.  (Tr. 228-29).  After examining her diagnostic studies, Dr. R. Macon Phillips, Jr. stated that he did not see any evidence of significant autoimmune connective tissue disease, but did diagnose Plaintiff with fibromyalgia and opined that she probably had mild osteoarthritis as well.  (Tr. 227).

Dr. Marlin D. Gill performed a consultative evaluation on October 29, 2007 and determined that Plaintiff had generalized chronic pain and history of fibromyalgia.  (Tr. 270). He found Plaintiff had a normal gait and could sit for a maximum of twenty minutes, stand for a maximum of thirty minutes, and walk one to two blocks.  (*Id.*).

On December 4, 2007, at the request of Dr. Phillips, Plaintiff was seen by Dr. Howard G. Miller for pain in her left knee.  (Tr. 423-24).  Dr. Miller opined that Plaintiff, for her age, had fairly advanced osteoarthritis in her left knee and prescribed Feldene to be used daily, along with some suggested weight loss and daily exercises.  In two subsequent visits with Dr. Phillips, he

4

opined that Plaintiff was "doing reasonably well" with her fibromyalgia and recommended she continue her medication as instructed. (Tr. 302-03).

With the exception of one visit on November 16, 2009 with Dr. Phillips, the remainder of Plaintiff's treatment for fibromyalgia at RANA was handled by Certified Nurse Practitioner Tim Byrum. (Tr. 385). From October 2008 through July 2010, Plaintiff saw Mr. Byrum nine separate times. (Tr. 299-300, 395, 390, 388, 466, 463, 461, 459). During these examinations, Mr. Byrum modified Plaintiff's prescription of Lyrica, Cymbalta, and Mobic for treatment of her fibromyalgia. (*Id.*). Mr. Byrum also treated Plaintiff for depression. (*Id.*). As a result of a written inquiry dated August 23, 2010 from Plaintiff's attorney, Mr. Byrum noted that based on the treatment received by Dr. Phillips and himself, Plaintiff would have chronic moderately severe pain that is sufficient to cause distraction from task. (Tr. 470). He also opined that Plaintiff does not get refreshing sleep and has to lie down daily for 30 minutes to one hour intervals. (*Id.*). In conclusion, Mr. Byrum claimed that Plaintiff is working very hard to get better and is compliant with all recommendations. (*Id.*). It is important to note, however, that the office of RANA reported that the practice lacks the equipment necessary to perform a valid Functional Capacity Evaluation. (Tr. 298).

Plaintiff submitted two consultative examinations performed by John R. Haney, Ph.D. for her psychological condition. (Tr. 273-74, 338-39). After his examination on October 31, 2007, Dr. Haney diagnosed Plaintiff with Major Depressive Disorder, single episode, moderate, without psychotic features, and a Pain Disorder associated with both psychological factors and a general medical condition. (Tr. 273-74). As a result of this evaluation, Dr. Haney opined that Plaintiff's ability to function in most jobs "appeared moderately to severely impaired due to [her] physical and emotional limitations." (*Id.*). Following his second consultative examination

of Plaintiff on June 25, 2009, Dr. Haney diagnosed Plaintiff with Major Depressive Disorder, single episode, moderate to severe, with suicide ideation; Pain Disorder associated with both psychological factors and a general medical condition; and Borderline Intellectual Functioning. (Tr. 338-39).  Again, Dr. Haney opined that Plaintiff's ability to function in most jobs appeared moderately to severely impaired, but did mention that although insight appeared poor, Plaintiff seemed capable of managing her own funds.  (*Id.*).

Several times throughout 2009, Plaintiff was examined by Dr. Wayne A. Jones at Limestone Community Care for various illnesses including coughing, headaches, vomiting, and high blood pressure.  (Tr. 308-28, 398-421).  Most relevant to this case, Dr. Jones treated Plaintiff for high blood pressure; an illustrative example is an examination that occurred on November 17, 2009, in which Plaintiff's blood pressure was 170/100 and had failed to remain constant.  (Tr. 401-403).  As a result of this examination, Dr. Jones prescribed Avalide.  (*Id.*).

In a Function Report submitted to the Social Security Administration in which Plaintiff depicts the tasks that she believed that she could and could not do, Plaintiff stated that she does household chores such as putting clothes in the washer and loading the dishwasher.  (Tr. 176). She also claimed that she could pay bills, count change, use a checkbook, and go to the store for her medicine by herself.  (Tr. 177).  She further stated that lifting, walking, sitting, standing, and her concentration were affected by her conditions.  (Tr. 179).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test.    20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is

work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant

engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. §

404.1520(b).  Second, the ALJ must determine whether the claimant has a medically

determinable impairment or a combination of medical impairments that significantly limits the

claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such

impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether

the claimant's impairment meets or medically equals the criteria of an impairment listed in 20

C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under

the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ

must first determine the claimant's residual functional capacity ("RFC"), which refers to the

claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step,

the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R.

§ 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant

work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to

perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. §

404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant

is able to perform any other work commensurate with her RFC, age, education, and work

experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the

ALJ to prove the existence, in significant numbers, of jobs in the national economy that the

claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

404.1560(c).

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2010, and that she has not engaged in substantial gainful activity since November 28, 2007, her amended alleged onset date of disability. (Tr. 20). Based upon the medical evidence presented, the ALJ concluded that Plaintiff has fibromyalgia and depression, impairments that together are "severe" within the meaning of the Regulations, but not severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21, 27).

The ALJ specifically explained her refusal to qualify Plaintiff's depression as an impairment severe enough to equal one of the listed impairments in the Act because although Plaintiff was treated for depression by her treating physician, she never sought specific treatment from a mental health professional. (Tr. 27). The ALJ also determined that Plaintiff's medical records contained no specific evidence of decompensation as a result of her depression, or a more than moderate restriction on activities of daily living, social functioning, or maintaining concentration, persistence, or pace. (*Id.*).

The ALJ further concluded that Plaintiff has the RFC to perform light work, including frequently pushing and pulling with her upper and lower extremities, but is limited to performing simple, routine, and repetitive tasks that are not performed in a fast-paced produced environment. (Tr. 27). The ALJ stated that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the statements she made concerning the intensity, persistence and limiting effects of the symptoms were not credible due to the extent that they were inconsistent with her RFC. (Tr. 28). This inconsistency existed primarily due to Plaintiff's admission during the hearing that she would occasionally

help out at a convenience store as a cashier, but did not help out the day before the hearing because she was afraid that it would be brought up at her hearing.  (Tr. 28, 59-60).

With regard to Plaintiff's fibromyalgia and neck condition, the ALJ cited several instances in the record where Plaintiff's treating physicians stated that the medication and treatment exercises seemed to be working well for her.  (Tr. 28-30).  The ALJ further noted that although there were numerous allegations of disabling pain symptoms, there were no indications of restrictions placed on Plaintiff by treating or examining physicians, and she claimed to have no problem functioning and doing basic daily activities.  (Tr. 30).  According to the ALJ, the credibility of Plaintiff's limitations were further reduced by the contradiction in her Function Report in which she indicated that she could do household chores, go shopping by herself, pay bills, count change, and use a checkbook.  (Tr. 30-31).  Additionally, the ALJ stated that little weight was given to the assessments made by Dr. Haney because he only saw Plaintiff twice, did not treat her, and his assessments were based solely on Plaintiff's subjective complaints.  (Tr. 31).  Finally, the ALJ gave little weight to the assessments of Mr. Byrum because, although he is a Certified Registered Nurse Practitioner, his assessments were based primarily upon Plaintiff's subjective complaints and were not endorsed by Dr. Phillips.  (*Id.*).

The ALJ concluded that Plaintiff is capable of performing her past relevant work as a cashier, which does not require the performance of work-related activities precluded by her RFC.  (Tr. 31).  Therefore, ALJ determined that Plaintiff is not disabled as defined in the Act and therefore, not entitled to a period of disability or DIB.  (Tr. 32).

### III.    Plaintiff's Argument for Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed.  (Pl.'s Mem. 2).

Plaintiff argues that the ALJ's decision in this case was neither supported by substantial evidence, nor made in accordance with correct legal standards.  (*Id.*). In support of her argument, Plaintiff asserts that the ALJ: (1) committed reversible error in failing to find her neck problems as severe under the second step of the evaluative process; (2) improperly rejected the nurse practitioner's opinion; (3) improperly rejected the consulting psychologist's opinion; (4) failed to fully develop the record in this case; and (5) improperly determined her RFC.  (Pl.'s Mem. 2-3).

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See Id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).   If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See*

*Martin*, 894 F.2d at 1529.   While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.   Discussion

### A.   The ALJ Did Not Err in Refusing to Find Plaintiff's Neck Problems as Severe Under the Second Step of the Evaluative Process

Plaintiff argues that the ALJ's failure to characterize her neck problems as severe was a significant error.  (Pl.'s Mem. 5).  Plaintiff contends that the ALJ did not evaluate her neck symptoms after the second step of the evaluation.  (*Id.*). In particular, it is Plaintiff's position that "the ALJ's failure to consider or even address [her neck impairments] as part of her determination of severity [was] a reversible error." (*Id.*).

The court finds that Plaintiff's argument concerning the severity of her neck impairment lacks merit.  Plaintiff's assertion that the ALJ did not consider or address her neck impairments in the ALJ's determination of the severity of her impairments is incorrect.  In describing the elements of the record that affected the ALJ's decision under the second step of the evaluation, the ALJ devoted at least six full paragraphs to describing Plaintiff's examinations and procedures with Dr. Ghavam and Dr. Boyer concerning her neck.  (Tr. 21-26) (describing the results of Plaintiff's MRI, effects of epidural and ACDF, and satisfactory pain relief in her arms following ACDF).  The ALJ considered the *entire* medical record, including impairments that were not considered severe, when determining Plaintiff's RFC as evidenced by her focus on the ACDF and Dr. Ghavam's encouragement for Plaintiff to gradually increase her activities and limit overhead activity.  (Tr. 29).  Finally, as the Eleventh Circuit held in *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823 (11th Cir. 2010), "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe" and even if the ALJ erred by

11

not recognizing every severe impairment, the error was harmless since he found at least one such impairment.  *Id.* at 824-25.  Here, the ALJ found that Plaintiff had two severe impairments: fibromyalgia and depression.  (Tr. 21).  Therefore, the court cannot conclude that failure to identify Plaintiff's neck impairments as severe was a reversible error.

### B.    The ALJ Properly Evaluated the Nurse Practitioner's Opinion

Plaintiff argues that ALJ erred in giving little weight to the nurse practitioner's opinion. (Pl.'s Mem. 5-9).  In support of this argument, Plaintiff contends that the ALJ's justification for little weight -- Dr. Phillips's failure to endorse Mr. Byrum's functional assessment -- was an error in judgment.  (Pl.'s Mem. 7).  Plaintiff further argues that the ALJ's statement that Mr. Byrum's assessment lacked weight because it was based on subjective complaints by Plaintiff is "spurious, at best" and "the ALJ plainly did not follow the guidelines set forth in [Social Security Ruling] SSR-06-3p."  (Pl.'s Mem. 9).

Mr. Byrum is a nurse practitioner, which, according to federal regulations is not an "acceptable medical source" but is considered an "other source." 20 C.F.R. § 404.1513(a), (d)(1).  As such, the ALJ is to weigh his opinion in accordance with factors enumerated in SSR 06-03p, which explicitly states that although 20 C.F.R. §§ 404.1527(d) and 416.927(d)[4] only apply to "acceptable medical sources" the same factors can be used to evaluate "other sources." These factors include: how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion, and any other factors that tend to support or refute the opinion.  20 C.F.R. §§ 404.1527(c) and 416.927(c).  Plaintiff claims that the record is devoid of any discussion of these factors.  (Pl.'s Mem. 8).

---

[4]Although the SSR refers to section (d) for these factors, a recent change in the C.F.R. has moved them to section (c).

Even assuming that in the unique context of this case the ALJ was required, absent good cause, to consider Mr. Byrum's assessment (a proposition that the court substantially doubts),[5] there was clearly sufficient reason to reject or ignore it.

The ALJ explicitly applied little weight to Mr. Byrum's assessment regarding Plaintiff for two reasons: (1) his assessment appears to have been based primarily on Plaintiff's subjective complaints; and (2) the assessment was not endorsed by Dr. Phillips.  (Tr. 31).  Here, the ALJ does not address every factor as pointed out by Plaintiff; however, the ALJ was not required to explicitly address every factor as long as the ALJ provides "'good cause' for rejecting a treating physician's medical opinions." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011); *see Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Here, the ALJ did not reject a treating physician's medical opinion, but rather an acceptable nonmedical source's opinion.  The ALJ's justification that Dr. Phillips did not endorse the assessment is more than enough to satisfy good cause for attaching little weight to Mr. Byrum's assessment as evidenced below.[6]

Plaintiff further alleges that the ALJ made an inference that the lack of Dr. Phillips's endorsement of Mr. Byrum's assessment could only indicate that he disagreed with Mr. Byrum. (Pl.'s Mem. 7).  In support of this challenge, Plaintiff cites a "To Whom it May Concern" letter, in order to prove that another possible inference exists.  (*Id.*).  This inference provides that Dr.

---

[5]As the court has already noted, because Mr. Byrum is not an "accepted medical source" as defined in the regulations, the ALJ is not obligated to accept evidence from him as she would for an accepted medical source. 20 C.F.R. § 404.1513(a).  Social security regulations permit, but do not require, the ALJ to consider evidence submitted by non-accepted medical sources.  20 C.F.R. § 404.1513(d)(1).  Furthermore, evidence from a non-accepted medical source cannot be used to establish the existence of a medical impairment.  Such evidence *may* be consulted only to describe the nature and severity of a medical impairment elsewhere established by an accepted medical source.  *Id*; *see also* Social Security Ruling 06-03p, 71 Fed. Reg. 45593, 45593 (Aug. 9, 2006).

[6] "Good cause" exists "where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records." *Lewis*, 125 F.3d at 1440 (citations omitted).

Phillips "was asked to complete a physical capacities evaluation form, but refused and offered to refer [Plaintiff] for a formal functional capacity evaluation." (*Id.*). The letter actually states that RANA lacks the equipment to perform a valid functional capacity evaluation. (Tr. 298). This undercuts the credibility of Mr. Byrum's functional assessment at the request of Plaintiff's attorney because it demonstrates Mr. Byrum's willingness to ignore Dr. Phillips's refusal to provide a functional assessment without the adequate equipment to do so. (Tr. 470). The assessment is also inconsistent with Mr. Byrum's own treatment notes that Plaintiff was sleeping better at night and exercising in the pool three times a week. (Tr. 459). Therefore, the court finds that there is substantial evidence in the record to support the ALJ's decision to provide little weight to Mr. Byrum's assessment.

### C.  The ALJ Properly Evaluated the Consulting Psychologist's Opinion

The ALJ gave little weight to Dr. Haney's assessments of Plaintiff because he only saw Plaintiff twice, did not treat her, and based his assessments primarily on Plaintiff's subjective complaints which are not consistent with the medical evidence of record. (Tr. 31). Plaintiff contends that the fact Dr. Haney only saw her twice and did not treat her, by themselves, are not valid reasons to give a consultative examiner's opinions little weight. (Pl.'s Mem. 10). Plaintiff further contends that the ALJ did not provide specific examples of inconsistent evidence because there is no evidence that is contradictory to Dr. Haney's assessments. (*Id.*).

As mentioned above, 20 C.F.R. §§ 404.1527(c) and 416.927(c) both indicate that length of the treatment relationship, nature and extent of treating relationship, the frequency of examination, and consistency of an opinion with the entire record can affect the weight given to an assessment. Therefore, it was well within the ALJ's discretion under the federal regulations to use frequency of examination and extent of the treating relationship in assessing the weight

given to Dr. Haney's opinion.[7]   Dr. Haney only examined Plaintiff twice, and although he diagnosed her with a depressive disorder, he did not provide any medication to alleviate her symptoms.  (Tr. 273-74, 338-39).

Contrary to Plaintiff's argument, there is evidence that contradicts Dr. Haney's assessment that Plaintiff's ability to function in most jobs would be moderately to severely impaired due to physical and emotional limitations.  (Tr. 273, 339).  For example, after Dr. Haney's assessment of Plaintiff, she functioned without limitation as evidenced by her arrest on October 27, 2009, for selling cigarettes to minors while working as a cashier at a convenience store.  (Tr. 208).  Plaintiff also stated in her functional assessment that she could drive, go out of the house to shop for medicine on her own, manage her money, and had no problems getting along with authority figures.  (Tr. 176-80).  This would indicate that Plaintiff is capable of performing her past relevant work as a cashier if performed under the limitations described in the ALJ's RFC.  Therefore, after consideration of the enumerated factors relevant to medical opinion assessment and the inconsistent facts in the record, the court finds there is substantial evidence to support the ALJ's decision to give little weight to Dr. Haney's opinion.

### D.    The ALJ Adequately Performed Her Duty to Develop the Record

Plaintiff notes that the ALJ gave little weight to Mr. Byrum's, the State Agency physicians', and Dr. Haney's opinions of her RFC.   (Pl.'s Mem. 12).  Plaintiff therefore contends that the ALJ had a duty to send her for an additional medical consultative examination as a result of the alleged lack of evidence to support the ALJ's RFC determination.  (*Id*.).

The ALJ has a basic duty to fully and fairly develop the record.  *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981).  However, the ALJ has no duty to order additional

---

[7]The ALJ's decision makes clear that frequency of examination and extent of the treating relationship were not her only justifications; she also cited to the fact that Dr. Haney's assessment was inconsistent with the record.

medical evidence when the evidence in the record is sufficient to support the ALJ's disability determination.  *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).  "The regulations 'normally require' a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources. *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (citing 20 C.F.R. § 404.1519a(b)).

The ALJ adequately developed the record.  The ALJ in her opinion described in detail Plaintiff's medical history from numerous doctors concerning numerous impairments.  (Tr.  21-31).  This includes statements regarding Plaintiff's alleged limitations and RFC made by Plaintiff herself, the State's consulting doctors, Mr. Byrum, and Dr. Haney.  (Tr. 171-81, 329-36, 337-39, 344-61, 470).  The fact that the ALJ determined these opinions should receive little weight has no effect on the amount of substantial evidence within the record that support her determination of Plaintiff's RFC.  In fact, "[t]he Commissioner's regulations do not require the ALJ to base [her] RFC finding on an RFC assessment from a medical source." *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011) (citing 20 C.F.R. § 404.1546(c)).  Therefore, it is sufficient for the ALJ to determine Plaintiff's RFC despite the little weight she attached to the medical opinions.  Also, the court follows precedent established in *Moore v. Barnhart* that "credibility determinations are the province of the ALJ," and as such, the court gives deference to the weight determinations made by the ALJ.  405 F.3d 1208, 1212 (11th Cir. 2005).  Finally, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)); *Good v. Astrue*, 240 F. App'x 399, 404 (11th Cir. 2007).

Upon this court's finding that the record contains substantial evidence to support the ALJ's decision, the ALJ did not fail her duty to develop the record simply because she gave Plaintiff's medical opinions little weight.

### E.     The ALJ Appropriately Determined Plaintiff's RFC

Finally, Plaintiff alleges that the ALJ failed to comply with the SSR 96-8p requirement to "set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work," and therefore inadequately determined Plaintiff's RFC.  (Pl.'s Mem. 13).  Plaintiff goes so far as to allege that the ALJ failed to even mention pain or how depression may affect her ability to work.  (*Id.*).

These arguments are simply off the mark.  The ALJ explicitly states in her RFC analysis that Plaintiff testified that pain was the major problem that kept her from working.  (Tr. 28).  The ALJ then contrasted that complaint with the evidence that Plaintiff testified that she "filled in" at the convenience store as a cashier whenever they needed someone to help out.  (*Id.*).  Plaintiff further testified she was filling in for the owner when she was arrested for selling cigarettes to a minor on October 17, 2009.  (Tr. 28, 59-65, 208).  Additionally, the ALJ acknowledged that no treating physicians placed any limitations on Plaintiff despite complaints of disabling pain.  (Tr. 30).  As to Plaintiff's ability to physically function, she explicitly stated in her function report that she had no problems dressing, bathing, preparing her own meals, loading the dishwasher, driving by herself, and paying her bills.  (Tr. 30-31).  The ALJ described Plaintiff's depression and her treating and consulting physicians' opinions concerning her psychological state.  (Tr. 30).  Even though Plaintiff acknowledged her depression, she claimed that the Lyrica was working well for her and her medications provided no negative side effects.  (Tr. 30, 461, 466).

The final responsibility for deciding Plaintiff's RFC is reserved for the ALJ based upon the entire record.  *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546(c).  Relevant evidence for this inquiry includes not only medical assessments, but also medical reports from treating and consulting sources, and descriptions and observations of Plaintiff's limitations made by Plaintiff and others.  *See* 20 C.F.R. § 404.1545(a)(3).  The ALJ's analysis and findings, as well as her determination of Plaintiff's RFC are each well supported by substantial evidence.

## VI.    Conclusion

The court concludes that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____18th_____ day of June, 2013.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE